IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RODNEY BRISCO, AS ADMINISTRATOR FOR THE ESTATE OF MICHAEL BRISCO, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:20-cv-00643-E |
| CITY OF LANCASTER, TEXAS, and ZACHARY BEAUCHAMP, | § § § § | |
| Defendants. | § § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is defendant Zachary Beauchamp's Motion for Summary Judgment (Doc. 29). Having carefully considered Beauchamp's motion, the parties' briefing, and applicable law, the Court finds the motion should be granted for the following reasons.

### BACKGROUND

On March 18, 2018, Beauchamp, a Lancaster Police Department patrol officer, was on-duty and patrolling with recruit officer Shane Lemoine (Doc. 31, p.7). The officers' patrol car was equipped with an in-car camera system (*Id*.) As they rode northbound on Dewberry Boulevard, Beauchamp noticed a white SUV illegally parked in a fire lane at the Dewberry Apartments (*Id*. pp. 7-8). The Dewberry Apartments was a well-known location for storing and selling dangerous narcotics (*Id*., p. 8).

Michael Brisco, the SUV's driver, was on the phone (*Id*.). Beauchamp advised over the police radio that he and Lemoine would circle back and make contact with the driver (*Id*.; Exh. 8 at 3:30-4:05). Beauchamp's justification for the traffic stop was that Brisco was parked in a fire lane (*Id*., pp. 8, 37).

1

Lemoine and Beauchamp circled around the apartment complex and, as they approached, Brisco was driving the SUV from one parking spot into another (*Id.*, pp. 8, 11, Exh. 3 at 0:20-0:25). Before Lemoine and Beauchamp could get out of the patrol car, Brisco opened his driver's side door and asked what he had done (*Id.*, p. 6, Exh. 3, 0:43-0:51). Beauchamp considered Brisco's behavior uncommon (*Id.*, p. 72).

As they approached, Lemoine on the driver's side of the SUV and Beauchamp on the passenger's side, Brisco closed his driver's side door (*Id.*, pp. 8, 11, Exh. 3 at 0:43-0:46). Lemoine asked Brisco for his license (*Id.*, pp. 8, 11; Exh. 3 at 0:43-0:51). Lemoine observed that Brisco was acting nervously with his hands shaking as he attempted to retrieve his identification (*Id.* p. 11). A few seconds later, Brisco placed the SUV in reverse gear (*Id.*, Exh. 3 at 0:53-0:59).

Meanwhile, Beauchamp observed that the SUV's front passenger side window was partially rolled down (*Id.*, p. 8). He smelled the odor of marijuana and observed what appeared to be a marijuana cigar next to the SUV's gear shifter (*Id.*). Beauchamp also thought Brisco was behaving nervously (*Id.*). Beauchamp instructed Lemoine to have Brisco step out of the vehicle (*Id.*). Brisco appeared surprised to see Beauchamp and quickly reversed the SUV out of the parking spot (Doc.31, pp. 8, 12, 39). Lemoine was forced to move quickly to avoid being struck by the SUV's driver side door (*Id.*, p. 12).

Beauchamp ran back towards the patrol car, which he intended to use as hard cover and to pursue Brisco (*Id.*, pp. 8, 11, 39, 72-73). Brisco, however, put the SUV in drive and accelerated toward Beauchamp (*Id.*, pp. 8, 12, 39). Brisco struck Beauchamp with the front of his SUV, knocking Beauchamp off his feet and causing him to land on the SUV's hood (*Id.*, pp. 8, 12, 39-40). With Beauchamp on the SUV's hood, Brisco "distinctly and intentionally gunned the engine and accelerated" (*Id.*, pp. 8, 73). Brisco turned right onto Dewberry Boulevard and continued to accelerate (*Id.*, p. 73). Fearing for his life, and holding onto the hood, Beauchamp

retrieved his pistol and fired at Brisco through the windshield (*Id.*, pp. 8, 73-74). Brisco was struck twice and later died from his wounds (Doc. 1). After Beauchamp fired his pistol, the SUV either swerved or hit a curb, and Beauchamp fell off the side of the hood (Doc. 31, p. 8). Experiencing severe pain, he was transported by ambulance to a local hospital (*Id.*).

Plaintiff Rodney Brisco, the administrator for Brisco's estate, asserts a claim against Beauchamp for "use of excessive and deadly force under the color of state law … in violation of [Brisco's] rights under the Fourth Amendment of the United States Constitution secured pursuant to 42 U.S.C. § 1983." Beauchamp has filed a motion for summary judgment, asserting qualified immunity and requesting that the Court dismiss with prejudice plaintiff's claim against him.

## LEGAL STANDARDS

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it might affect the outcome of the suit," and "[a] factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted)).

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 57 U.S. 7, 11 (2015) (per curiam)). "[A] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (citation omitted). Although the court draws all factual inferences in favor of the plaintiff, the plaintiff "must point out a genuine

3

dispute of material fact as to whether [the defendant's] allegedly wrongful conduct violated clearly established law." *Id.* (citation omitted).

To determine whether a defendant is entitled to qualified immunity at the summary judgment stage, courts "engage in a two-pronged inquiry.  The first asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right.'" *Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021) (quoting *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014)).  Next, the court considers "whether … the right in question was 'clearly established' at the time of the violation."  *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  The court may decide the order in which it applies these inquiries. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## ANALYSIS

Plaintiff's complaint asserts a Fourth Amendment excessive force claim against Beauchamp (Doc. 1).  The Court first addresses whether the facts, taken in the light most favorable to plaintiff, show that Beauchamp's conduct violated Brisco's constitutional rights. *Garcia*, 957 F.3d at 600.

A section 1983 excessive force claim arising from an investigatory stop invokes the protection provided by the Fourth Amendment against "unreasonable seizure." *See* U.S. CONST. amend. IV.  "To prevail on an excessive-force claim, the plaintiff must show (1) an injury, (2) that resulted directly from an officer's use of force, and (3) that the force used was 'objectively unreasonable.'"  *Aguirre*, 995 F.3d at 406 (citing *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)).  To determine whether an officer's use of force was excessive, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tolan,* 572 U.S. at 656 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

4

"Excessive force claims are necessarily fact-intensive; whether the force used is excessive or unreasonable depends on the facts and circumstances of each particular case." *Darden v. City of Forth Worth*, 880 F.3d 722, 728 (5th Cur. 2018) (internal quotation marks and citation omitted). "In making this determination, a court should consider the totality of the circumstances, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* at 728–29 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene." *Id.* More specifically, the court must review the relevant considerations from a reasonable officer's perspective "on the scene, rather than with the 20/20 vision of hindsight," to account for "tense, uncertain, and rapidly evolving" circumstances requiring police offers to make "split-second judgments ... about the amount of force that is necessary." *Graham*, 490 U.S. at 396–97.

"[T]he use of deadly force is permitted only to protect the life of the shooting officer or others: 'Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.'" *Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019) (en banc) (quoting *Garner*, 471 U.S. at 11). The court must "analyze whether, taking the evidence in the light most favorable to [the plaintiff], the level of force … used was unreasonably excessive to the needs of the situation, *see Graham*, 490 U.S. at 389, including whether the [defendant] unreasonably and unnecessarily employed deadly force." *Aguirre*, 995 F.3d at 406.

The Fifth Circuit's decision in *Hathaway v. Bazany*, 507 F.3d 312, 322–23 (5th Cir. 2007), provides guidance for the Court's analysis in this case. In *Hathaway,* a police officer stopped a vehicle in order to investigate a gang-related altercation in the area. *Id.* at 315. The

vehicle suddenly accelerated towards the officer, who was on foot approximately ten feet from the vehicle. *Id.* at 316. Realizing he would not be able to get out of the vehicle's way, the officer decided to fire his weapon. *Id.* The vehicle struck the officer on his leg. *Id.* The officer fired his weapon, but did not know whether he fired before, during, or immediately after he was struck by the vehicle. *Id.* The Fifth Circuit nevertheless held that the officer's use of deadly force was justified. *See id.* at 321–22. Considering the officer's "close proximity" to the vehicle and the "extremely brief period of time" in which he had to react to the vehicle moving toward him, the Fifth Circuit concluded the officer was objectively reasonable in his perception of a threat of serious physical harm to himself and in his decision to respond to that threat with deadly force. *Id.* at 322.

In *Sanchez v. Edwards*, 433 F. App'x 272, 275–76 (5th Cir. 2011) (per curiam), the Fifth Circuit also determined that a vehicle accelerating toward a nearby officer was a sufficient threat of harm to render an officer's use of deadly force reasonable. In *Sanchez*, two officers surveilling a residence approached Sanchez's vehicle after he pulled into a neighboring driveway. *Id.* at 273. The officers ordered Sanchez to stop, but he reversed the vehicle into the street, put the car into drive, and accelerated in the direction of Banquer, one of the officers. *Id.* Both officers fired their service weapons; the vehicle struck Banquer, and three shots struck Sanchez. *Id.* at 274. The Fifth Circuit affirmed the district court's grant of summary judgment for the officers, concluding "the officers['] decision to use deadly force was reasonable under the circumstances" because of the "short period of time in which [they] had to react to Sanchez's abrupt change of direction and Banquer's obvious peril given his position in front of the vehicle." *Id.* at 273, 275–76.

Here, the summary judgment evidence shows that, as soon as Lemoine asked Brisco to step out of the SUV, Brisco immediately reversed the SUV out of the parking space, turned the

6

SUV, accelerated, and struck Beauchamp as he was running to the patrol car (Doc. 31, pp. 8, 12, 39-40). Then, with Beauchamp on top of the SUV's hood, Brisco continued to accelerate (*Id*., pp. 8, 73). Beauchamp was convinced that, if he fell from the hood, Brisco would run over him (*Id*., p. 8). Thinking he was going to die, Beauchamp fired his pistol at Brisco to try and stop him (*Id*.).[1]

Plaintiff has produced no evidence to dispute the reasonableness of Beauchamp's belief that the use of deadly force was necessary to protect his life at the time he fired his weapon. Instead, the evidence shows that, under the totality of the circumstances, including Beauchamp's "close proximity" on the SUV's hood and the "extremely brief period of time" in which he had to react, the use of deadly force was neither unreasonable nor unnecessary. *See Wright v. City of Garland*, 2014 WL 5878940, at *10 (N.D. Tex. Nov. 13, 2014) (considering officer's "obvious peril" standing in front of vehicle and that he had only a very short period of time to react to plaintiff's abrupt acceleration, a reasonable jury could only find the officer "reacted reasonably and did not violate [plaintiff's] Fourth Amendment rights when he fired his weapon at [plaintiff's] vehicle"). Therefore, as in *Hathaway and Sanchez*, plaintiff cannot meet his burden to show a constitutional violation occurred. Accordingly, the Court finds Beauchamp is entitled to qualified immunity.[2]

Plaintiff's response to Beauchamp's summary judgment motion does not dispute the reasonableness of Beauchamp's use of deadly force. Indeed, plaintiff appears to concede that Beauchamp's use of force was "ultimately justified," but seeks recovery for Brisco's unlawful

---

[1] Lemoine, who observed the situation, was terrified he was about to watch Beauchamp die (Doc. 31, p. 12). Lemoine heard a thud and observed Beauchamp on the hood of the vehicle as Brisco turned right onto Dewberry and appeared to be accelerating (*Id*.). Lemoine heard multiple gun shots, but did not know if Brisco was shooting at Beauchamp or if Beauchamp was shooting to try and save his own life (*Id*.).

[2] Because the Court finds that Brisco's constitutional rights were not violated, we need not consider whether those rights were clearly established. *See Sanchez*, 433 F. App'x at 274.

seizure (Doc. 34, p. 12). Specifically, plaintiff asserts that Beauchamp "violated Michael Brisco's Fourth Amendment rights by conducting a vehicle stop of Mr. Brisco without probable cause or reasonable suspicion" and when Brisco "attempted to terminate the encounter, Defendant Beauchamp attempted to continue the unlawful seizure by using his person to block Mr. Brisco's path"[3] (*Id.*, p. 5).

Plaintiff, however, does not assert a claim for an unconstitutional traffic stop in this case. His only section 1983 claim, entitled "Count 1: 42 U.S.C. § 1983 Excessive Force," complains of Beauchamp's use of excessive and deadly force, and plaintiff has not sought leave to amend his complaint to allege a claim that the traffic stop violated Brisco's constitutional rights. Accordingly, such a claim is not before the Court. See *Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."). Further, if the Court were to construe plaintiff's summary judgment briefing on this new Fourth Amendment claim as a motion for leave to amend his complaint, *see Douglas v. Wells Fargo Bank, N.A.*, 992 F.3d 367, 373 (5th Cir. 2021), the Court finds leave should not be granted based on plaintiff's undue delay in seeking leave to amend and the futility of such an amendment.

Federal Rule of Civil Procedure 15(a)(2) provides that a court "should freely give leave when justice so requires" to a party seeking to amend its complaint. *See* FED. R. CIV. P. 15(a)(2); *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607–08 (5th Cir. 1998). To decide whether to allow amendment, the Court may consider factors including undue delay, bad faith or dilatory

---

[3] There is no summary judgment evidence to show that Beauchamp was "using his person to block Mr. Brisco's path." Beauchamp specifically testified that he had no intention of getting in front of the SUV to stop its path and, instead, was running to get back to the patrol car (Doc. 31, pp. 41-42). The dash cam video show that Beauchamp began to run from his position next to the SUV's passenger side toward the patrol car when Brisco began to reverse out of the parking spot (*Id.*, Exh. 3 at 1:09-1:12). The contact between Beauchamp and the SUV cannot be seen on the dash cam video.

motive, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, futility of amendment, and judicial economy.  *Price*, 138 F.3d at 608; *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).  "Whether leave to amend should be granted is entrusted to the sound discretion of the district court."  *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

Plaintiff has had ample opportunity to amend his complaint in this case, but declined to do so.  He was first served with a Rule 12(b) motion on April 7, 2020 (Doc. 10) and, therefore, had until April 28, 2020, to amend.  *See* FED. R. CIV. P. 15(a)(1) (deadline to freely amend a pleading is "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b)").  Thereafter, he could have amended the complaint with either Beauchamp's consent or leave of court.  *See* FED. R. CIV. P. 15(a)(2).  Accordingly, the Court finds plaintiff's undue delay in seeking leave to amend weighs against granting leave.

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]."  *Whren v. United States*, 517 U.S. 806, 809–10 (1996).  "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances," and the "reasonableness" inquiry is objective without consideration of "the actual motivations of the individual officers involved." *Id.* at 810, 813 (citations omitted).

Fifth Circuit courts use a two-step inquiry in addressing challenges to traffic stops.  *See United States v. Bams*, 858 F.3d 937, 942 (5th Cir. 2017); *United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013). The court first determines "whether the stop was justified at its inception," that is, whether the officer had an "objectively reasonable suspicion" that a traffic offense occurred or was occurring.  *See Bams*, 858 F.3d at 942.  Reasonable suspicion means "something more than an inchoate and unparticularized suspicion or hunch."  *United States v. Sokolow*, 490

U.S. 1, 7 (1989) (internal quotation marks omitted) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).  If the stop was justified, the court determines "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop of the vehicle in the first place." *Bams*, 858 F.3d at 942 (quoting *Andres*, 703 F.3d at 832).  "A traffic stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *Id.* (quoting *Andres*, 703 F.3d at 832).  However, an officer who has lawfully stopped a vehicle may order the driver to exit the vehicle. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) (per curiam).

Plaintiff asserts that the video from the patrol car's dashcam shows Brisco pulling out of one legal parking spot into another when the patrol car pulled up behind him and Beauchamp confirmed at his deposition that "it looks like he's coming out of a parking spot right there" ((Doc. 31, Exh. 3 at 0:20-0:25, p. 46).  Plaintiff also notes that the recording of the officers' conversation prior to the traffic stop does not include any discussion about Brisco being parked in a fire lane and, thus, supports a finding that the fire lane violation was pretext for an illegal stop.

The summary judgment evidence, however, is undisputed that, prior to conducting the traffic stop, both Beauchamp and Lemoine observed Brisco illegally parked in a fire lane (Doc. 31, pp. 8, 11, 33).  And, in his deposition, Beauchamp explains that Brisco's SUV "moved from the fire lane to a parking spot" while the officers circled around the block and approached the SUV (*Id.*, pp. 46-47).  The fact that the officers did not explicitly discuss the parking violation over the radio prior to the stop is not sufficient to show pretext.  And a traffic stop does not violate the Fourth Amendment if the officer making the stop has probable cause to believe that a traffic violation, such as parking in a fire lane, has occurred. *United States v. Escalante*, 239 F.3d 678, 680–81 (5th Cir. 2001) (citing *Whren*, 517 U.S. at 810).  Further, Beauchamp's

10

observation of a marijuana cigar in the SUV provided reasonable suspicion to prolong the stop and ask that Brisco step out of the SUV. Because the summary judgment record contains specific and articulable facts in support of the officers' reasonable suspicion that Brisco committed a violation by parking in a fire lane, the traffic stop did not violate Brisco's Fourth Amendment rights. Accordingly, the Court finds that, even if it granted leave to amend plaintiff's complaint, the amendment would be futile.

## CONCLUSION

Because Beauchamp is entitled to qualified immunity, his Motion for Summary Judgment (Doc. 29) is **GRANTED**. Plaintiff's section 1983 claim against Beauchamp is **DISMISSED** with prejudice.

**SO ORDERED**; signed June 23, 2021.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE